1
2
3
4

**BIGHORN LAW, LLC**
**Chad A. Schaub [030226]**
500 W. Ray Road, Suite 10
Chandler, AZ 85225
Phone: (480) 744-6550
Fax: (480) 717-4041
Email: chad@bighornlaw.com

5    *Attorney for Plaintiff*

6

7

8    **IN THE UNITED STATES DISTRICT COURT**

9    **FOR THE DISTRICT OF ARIZONA**

10   BRITTNEY SEMONE,                          CASE NO.  3:19-cv-08129-CDB

11                        Plaintiff,

12   vs.

13   BLEFA GmbH, a German company with        **FIRST AMENDED**
     limited liability; BLEFA KEGS. INC., a   **COMPLAINT**
14   Delaware corporation; SABCO, INC., an Ohio   **(By Right)**
     corporation, DIXON VALVE & COUPLING
15   COMPANY, LLC, a Maryland limited
     liability company; DOE INDIVIDUALS I
16   through X; and ROE LEGAL ENTITIES I
     through X,
17
18                        Defendants.

19

20          Plaintiff Brittney Semone ("Semone"), through her attorneys of record Bighorn

21   Law, LLC, complains and alleges against Defendants:

22                              **THE PARTIES**

23
24          1.      Semone is a resident of Coconino County, Arizona.

25          2.       Blefa GmbH ("Blefa") is a German company with limited liability.

26          3.      Upon information and belief, Blefa's corporate headquarters in the

27   Germany.

28

4.      Blefa conducts business internationally including the United States of America and the State of Arizona.

5.      Upon information and belief, Blefa also does business under the trade name or legal entity name of Frankie, Frankie Blefa, or both.

6.      Upon information and belief, Blefa conducted business in the State of Arizona in 2017.

7.      Blefa Kegs, Inc. ("Blefa USA") is a Delaware corporation.

8.      Blefa USA conducts business throughout the United States including the State of Arizona.

9.      Blefa USA has corporate headquarters in La Vergne, Tennessee, and Vancouver, Washington.

10.     Upon information and belief, Blefa USA conducted business in the State of Arizona in 2017.

11.     Sabco, Inc. ("Sabco") is an Ohio corporation for profit.

12.     Sabco conducts business internationally including the United States of America and the State of Arizona.

13.     Upon information and belief, Sabco's corporate headquarters is in Toledo, Ohio.

14.     Upon information and belief, Sabco conducted business in the State of Arizona in 2017.

15.     Dixon Valve & Coupling Company, LLC ("Dixon") is a Maryland limited

liability company.

16.     Dixon conducts business throughout the United States including the State of Arizona.

17.     Dixon conducted business in the State of Arizona in 2017.

18.     Dixon's company headquarters is in Chestertown, Maryland.

19.     The true names and capacities of Defendants designated as Doe Individuals I through X and Roe Legal Entities I through X are responsible for the "Incident" described below and were the proximate cause of injuries and damages suffered by Semone.  When the true names and capacities of the Does I through X and Roe Legal Entities I through X are ascertained, Plaintiff will ask leave of this Court to amend this Amended Complaint to insert their true names and capacities.

20.     Doe Individuals I through X and Roe Legal Entities I through X have knowledge or reasonably should know that they are rightful Defendants.

21.     Doe Individuals I through X and Roe Legal Entities I through X–whose identities are unknown or have been misidentified above–are connected to this action because they designed, engineered, manufactured, and sold the keg, and components– including, but not limited to, the clasp, ferule, and cap–used with the Keg, identified in the "Incident" described below.

## JURISDICTION AND VENUE

22.     Semone incorporates by reference all preceding paragraphs of this Amended Complaint herein.

23.     The amount in controversy in this action is in excess of $75,000.00.

24.     Upon information and belief, Blefa is a citizen of German.

25.     Upon information and belief, Blefa USA is a citizen of the State of Delaware, Tennessee, and Washington.

26.     Upon information and belief, Sabco is a citizen of the State of Ohio.

27.     Upon information and belief, all the members of Dixon are citizens of the State of Maryland.

28.     This Court has subject matter jurisdiction over this action under 28 U.S. Code § 1332.

29.     Defendants caused events to occur in the State of Arizona–where the "Incident" described below occurred–causing the allegations in this lawsuit.

30.     Semone's injuries occurred in the State of Arizona.

31.     Because of its marketing, sales, and distribution strategies, Blefa and Blefa USA knew that their kegs would be sold to people in the State of Arizona and, upon information and belief, established specific relationships with Arizona vendors to sell their products–including the keg and components used with the keg involved in the "Incident" described below–in the State of Arizona.

32.     Because of its marketing, sales, and distribution strategies, Sabco knew that their kegs and components used with kegs including, but not limited to, the clasp, ferule, and cap would be sold to and used by people in the State of Arizona and, upon information and belief, established specific relationships with Arizona vendors to sell their products–

including the keg and components used with the keg involved in the "Incident" described below–in the State of Arizona

33.    Because of its marketing, sales, and distribution strategies, Dixon knew that its products and components used with kegs including, but not limited to, clasps, ferules, and caps would be sold to people in the State of Arizona and, upon information and belief, established specific relationships with Arizona vendors to sell their products–including their products and components affixed to or otherwise used in association with the keg involved in the "Incident" described below–in the State of Arizona.

## GENERAL ALLEGATIONS

34.    Semone incorporates by reference all preceding paragraphs of this Amended Complaint herein.

35.    Upon information and belief, Blefa designs, manufactures, assembles, distributes, markets, and sells kegs internationally including, but not limited to, persons (natural and legal) in the United States of America.

36.    Upon information and belief, Blefa designed, engineered, manufactured, assembled, distributed, marketed, and sold the keg involved in the "Incident" the Pinetop Brewing Co. in Pinetop-Lakeside, Arizona described below.

37.    Upon information and belief, Blefa USA designs, manufactures, assembles, distributes, markets, and sells kegs in the United States of America including, but not limited to, persons (natural and legal) in the State of Arizona.

38.    Upon information and belief, Blefa USA designed, engineered,

manufactured, assembled, distributed, marketed, and sold the keg involved in the "Incident" at the Pinetop Brewing Co. in Pinetop-Lakeside, Arizona described below.

39.     Blefa and Blefa USA represent that the kegs they design, manufacture, assemble, distribute, market, and sell:

      a.   As having "the best protection!"

      b.   As being "a reliable and extremely durable product."

      c.   As designed "to perform safely and reliably throughout their 30-year service lives."

40.     Upon information and belief, Sabco designs, manufactures, assembles, distributes, markets, and sells kegs internationally including, but not limited to, persons (natural and legal) in the United States of America.

41.     Upon information and belief, Sabco designed, engineered, manufactured, assembled, distributed, marketed, and sold the keg involved in the "Incident" at the Pinetop Brewing Co. in Pinetop-Lakeside, Arizona described below.

42.     Sabco represents:

      a.   It is renowned for making a "full line of high quality components–including, but not limited to, the clasp, ferule, and cap–which have become internationally recognized by brewing professionals as well as by advanced amateur level enthusiasts."

      b.   It represents that its products are "in over 40 countries globally" and in "many hundreds of micros, pubs, restaurants, and advanced home-brewers

everywhere."

    c.  It produces a "full array of professional level, turn-key components–including, but not limited to, the clasp, ferule, and cap–that will meet consumers highest expectations."

    d.  It is a "stainless steel specialist with technical fabrication, welding and reconditioning skills."

    e.  Through the years "it has been utilized for large scale keg reconditioning services, keg modifications, keg-valve full services, and other stainless-steel projects."

    f.  "Having reconditioned over 3 million kegs, it has collected a wealth of keg design knowledge."

43.    Upon information and belief, Sabco designed, engineered, manufactured, assembled, distributed, marketed, and sold products and components–including, but not limited to, the clasp, ferule, and cap–used with the keg involved in the "Incident" at the Pinetop Brewing Co. in Pinetop-Lakeside, Arizona described below.

44.    Upon information and belief, Dixon designed, engineered, manufactured, assembled, distributed, marketed, and sold products and components–including, but not limited to, the clasp, ferule, and cap–used with the keg involved in the "Incident" at the Pinetop Brewing Co. in Pinetop-Lakeside, Arizona described below.

45.    Upon information and belief, Doe Individuals I through X and Roe Entities I through X designed, engineered, manufactured, assembled, distributed, marketed, and

- 7 -

sold the keg–including products and components used with a keg–used at the Pinetop

Brewing Co. in Pinetop-Lakeside, Arizona and involved in the "Incident" described below

46.     Upon information and belief, the Defendants, and each of them, were the

agents, joint ventures, partners, employers or representatives of each other and,

participating in the acts and omissions alleged, were acting within the course and scope of

their authority as such servants, joint venturers, partners, employers, or representatives

and were acting with the permission and consent of the other Defendants.

47.     On March 27, 2017, Semone was at the Pinetop Brewing Co.

48.     While at the Pinetop Brewing Co., Semone entered a room where kegs were

located.

49.     Upon information and belief, while Semone was in the room where kegs

were located, a keg decompressed (the "Keg"), component(s) of the Keg dislodged–

exploding upward like a projectile–and struck Semone's face (the "Incident").

50.     Upon information and belief, the Keg was designed, engineered,

manufactured, assembled, distributed, marketed, and sold by Blefa.

51.     Upon information and belief, the Keg was designed, engineered,

manufactured, assembled, distributed, marketed, and sold by Blefa USA.

52.     Upon information and belief, the Keg was designed, engineered,

manufactured, assembled, distributed, marketed, and sold by Sabco.

53.     Upon information and belief, component(s) used with the Keg were

designed, engineered, manufactured, assembled, distributed, marketed, and sold by Sabco.

54. Upon information and belief, component(s) used with the Keg–including, but not limited to, the clasp, ferule, and cap–were designed, engineered, manufactured, assembled, distributed, marketed, and sold by Dixon.

55. Because the Keg and its components–including, but not limited to, the clasp, ferule, and cap–dislodged, exploded upward like a projectile, and struck Semone's face, she suffered injuries and damages.

56. Semone retained the services of Bighorn Law, LLC and Clear Counsel Law Group to prosecute this action and is entitled to reasonable attorneys' fees and costs.

## COUNT ONE

## STRICT PRODUCT LIABILITY

## (Against Blefa, Blefa USA, Sabco, Doe Individuals I through X, and Roe Lega Entities I through X)

57. Semone incorporates by reference all preceding paragraphs of this Amended Complaint herein.

58. Upon information and belief, Blefa or Blefa USA or both, designed, engineered, manufactured, assembled distributed, marketed, and sold the Keg knowing it would be used without inspection for defects.

59. Upon information and belief, Blefa, Blefa USA, or both placed the Keg into the stream of commerce.

60. Upon information and belief, Blefa, Blefa USA, or both sold or re-sold the Keg.

61. Upon information and belief, Blefa, Blefa USA, or both adopted and ratified the design

and manufacture of the Keg.

62.    Upon information and belief, Blefa, Blefa USA, or both intended the Keg to be used by breweries to brew beer.

63.    Upon information and belief, the Keg was in substantially the same condition as when it left the possession of Blefa.

64.    Upon information and belief, the Keg was in substantially the same condition as when it left the possession of Blefa USA.

65.    The Keg–when it left the possession of Blefa, Blefa USA, or both–was defective, inherently dangerous for its intended use, and unreasonably dangerous product that presented and constituted an unreasonable risk of danger and injury.

66.    Upon information and belief, Sabco, designed, engineered, manufactured, assembled distributed, marketed, and sold the Keg knowing it would be used without inspection for defects.

67.    Upon information and belief, Sabco placed the Keg into the stream of commerce.

68.    Upon information and belief, Sabco sold or re-sold the Keg.

69.    Upon information and belief, Sabco adopted and ratified the design and manufacture of the Keg.

70.    Upon information and belief, Sabco intended the Keg to be used by breweries to brew beer.

71.    Upon information and belief, the Keg was in substantially the same condition as when it left the possession of Sabco.

72.     The Keg–when it left the possession of Sabco–was defective, inherently dangerous for its intended use, and unreasonably dangerous product that presented and constituted an unreasonable risk of danger and injury.

73.     The Keg was defective because it failed to perform in a manner reasonably to be expected, given its nature and intended function, and was more dangerous than would be contemplated by the ordinary user having ordinary knowledge available in the community.

74.     The Keg had a flaw and was defectively designed in that, although being used in the ordinary manner intended by Blefa, Blefa USA, or both, the Keg did not perform as safely as an ordinary customer would expect.

75.     The Keg had a flaw and was defectively designed in that, although being used in the ordinary manner intended by Sabco, the Keg did not perform as safely as an ordinary customer would expect.

76.     Upon information and belief, Blefa, Blefa USA, or both knew or should have known about the defect in the Keg and failed to warn the consumer of the hazard and to instruct the user on how to avoid the hazard.

77.     Upon information and belief, Sabco knew or should have known about the defect in the Keg and failed to warn the consumer of the hazard and to instruct the user on how to avoid the hazard.

78.     Upon information and belief, the Keg had a flaw in manufacturing, causing an explosion and the component(s) launching like a projectile when the Keg was used in

the ordinary manner that Blefa, Blefa USA, or both intended.

79.   Upon information and belief, the Keg had a flaw in manufacturing, causing an explosion and the component(s) launching like a projectile when the Keg was used in the ordinary manner that Sabco intended.

80.   Upon information and belief, the Keg failed to include safety features that would have prevented the component(s) from becoming a projectile.

81.   Upon information and belief, the component(s) used with the Keg became a projectile because of a dangerous condition in the Keg.

82.   Upon information and belief, the Keg had a defect which rendered it unreasonably dangerous.

83.   Upon information and belief, the defect in the Keg existed when the product left Blefa, Blefa USA, or both.

84.   Upon information and belief, the defect in the Keg existed when the product left Sabco.

85.   At the time of the "Incident" described above, Semone was standing near the Keg in the manner intended and anticipated by Blefa, Blefa USA, Sabco, Does Individuals I through X, and Roe Legal Entities I through X.

86.   At the time of the "Incident" described above, Semone was unaware of any defect in the Keg or the dangerous condition of Keg.

87.   The defect in the Keg which caused an explosion and the component(s) used with the Keg to be launched like a projectile was the proximate cause of injuries and

1   damages suffered by Semone.

2
3   88.     The Keg was defective in its failure to warn of the danger of the component(s)
4   becoming a projectile.

5   89.     Failing to warn that the component(s) used with the Keg may become a projectile made
6   the Keg unreasonably dangerous.

7
8   90.     Safer alternative designs, including safety features, exist that would have prevented the
9   explosion and launching of component(s) used with the Keg like a projectile during ordinary use and
10  prevented or lessened Semone's injuries.

11  91.     The defective design of the Keg made the Keg unreasonably dangerous.

12  92.     As a direct and proximate result of each defect listed above, an explosion caused the
13  component(s) used with the Keg to launch like a projectile, struck Semone in the face, and caused
14  Semone to suffer injuries and damages.
15

16  93.     Upon information and belief–before it released possession of the Keg–Blefa, Blefa
17  USA, or both, including their officers, directors, and/or managers, knew that the Keg was
18  unreasonably dangerous, but decided to not remedy the hazard.
19

20  94.     Upon information and belief–before it released possession of the Keg–Sabco including
21  their officers, directors, and/or managers, knew that the Keg was unreasonably dangerous,
22  but decided to not remedy the hazard.
23

24  95.     Because of the allegations in this Count Three, Semone suffered injuries and damages
25  in an amount in excess of $75,000.00.

26  ///

27

28

## COUNT TWO

## STRICT PRODUCT LIABILITY

## (Against Dixon, Sabco, Doe Individuals I through X, and Roe Lega Entities I through X)

96. Semone incorporates by reference all preceding paragraphs of this Amended Complaint herein.

97. Upon information and belief, Dixon designed, engineered, manufactured, assembled distributed, marketed, and sold components used with the Keg–including, but not limited to, the clasp, ferule, and cap–knowing these components would be used without inspection for defects.

98. Upon information and belief, Dixon adopted and ratified the design, engineering, and manufacture of the components used with the Keg including, but not limited to, the clasp, ferule, and cap.

99. Upon information and belief, Dixon placed components used with the Keg–including, but not limited to, the clasp, ferule, and cap–into the stream of commerce.

100. Upon information and belief, Dixon sold or re-sold the components used with the Keg including, but not limited to, the clasp, ferule, and cap.

101. Upon information and belief, Dixon intended the components used with the Keg – including, but not limited to, the clasp, ferule, and cap–to be used by breweries to brew beer.

102. Upon information and belief, the components used with the Keg–including, but not limited to, the clasp, ferule, and cap–were in substantially the same condition as

when these components left the possession of Dixon.

103.    The components used with the Keg including, but not limited to, the clasp, ferule, and cap–when they left the possession of Dixon–were defective, inherently dangerous for their intended use, and unreasonably dangerous products that presented and constituted an unreasonable risk of danger and injury.

104.    Upon information and belief, Sabco designed, engineered, manufactured, assembled distributed, marketed, and sold the components used with the Keg –including, but not limited to, the clasp, ferule, and cap–knowing these components would be used without inspection for defects.

105.    Upon information and belief, Sabco adopted and ratified the design and manufacture of the components used with the Keg including, but not limited to, the clasp, ferule, and cap.

106.    Upon information and belief, Sabco placed components used with the Keg– including, but not limited to, the clasp, ferule, and cap–into the stream of commerce.

107.    Upon information and belief, Sabco sold or re-sold the components used with the Keg including, but not limited to, the clasp, ferule, and cap.

108.    Upon information and belief, Sabco intended the components used with the Keg–including, but not limited to, the clasp, ferule, and cap–to be used by breweries to brew beer.

109.    Upon information and belief, the components used with the Keg–including, but not limited to, the clasp, ferule, and cap–were in substantially the same condition as

when these components left the possession of Sabco.

110.   The components used with the Keg–including, but not limited to, the clasp, ferule, and cap–when they left the possession of Sabco–were defective, inherently dangerous for their intended use, and unreasonably dangerous products that presented and constituted an unreasonable risk of danger and injury.

111.   Upon information and belief, Doe Individuals I through X and Roe Legal Entities I through X designed, engineered, manufactured, assembled distributed, marketed, and sold components used with the Keg–including, but not limited to, the clasp, ferule, and cap–knowing these components would be used without inspection for defects.

112.   Upon information and belief, Doe Individuals I through X and Roe Legal Entities I through X adopted and ratified the design and manufacture of the components used with the Keg including, but not limited to, the clasp, ferule, and cap.

113.   Upon information and belief, Doe Individuals I through X and Roe Legal Entities I through X placed components used with the Keg including, but not limited to, the clasp, ferule, and cap into the stream of commerce.

114.   Upon information and belief, Doe Individuals I through X and Roe Legal Entities I through X sold or re-sold the components used with the Keg including, but not limited to, the clasp, ferule, and cap.

115.   Upon information and belief, Doe Individuals I through X and Roe Legal Entities I through X intended the components used with the Keg–including, but not limited to, the clasp, ferule, and cap–to be used by breweries to brew beer.

116.   Upon information and belief, the components used with the Keg–including, but not limited to, the clasp, ferule, and cap–were in substantially the same condition as when it left the possession of Doe Individuals I through X and Roe Legal Entities I through X.

117.   The components used with the Keg–including, but not limited to, the clasp, ferule, and cap–when they left the possession of Doe Individuals I through X and Roe Legal Entities I through X–were defective, inherently dangerous for their intended use, and unreasonably dangerous products that presented and constituted an unreasonable risk of danger and injury.

118.   The components used with the Keg–including, but not limited to, the clasp, ferule, and cap–were defective because they failed to perform in a manner reasonably to be expected, given their nature and intended function and were more dangerous than would be contemplated by the ordinary user having ordinary knowledge available in the community.

119.   The components used with the Keg–including, but not limited to, the clasp, ferule, and cap–had a flaw and were defectively designed in that, although being used in the ordinary manner intended by Dixon, Sabco, Doe Individuals I through X, or Roe Legal Entities I through X, these components did not perform as safely as an ordinary customer would expect.

120.   Upon information and belief, Dixon knew or should have known about the defect in the components used with the Keg–including, but not limited to, the clasp, ferule,

and cap–and failed to warn the consumer of the hazard and to instruct the user on how to avoid the hazard.

121.   Upon information and belief Sabco knew or should have known about the defect in the components used with the Keg–including, but not limited to, the clasp, ferule, and cap–and failed to warn the consumer of the hazard and to instruct the user on how to avoid the hazard.

122.   Upon information and belief, Doe Individuals I through X and Roe Legal Entities I through X knew or should have known about the defect in the components used with  the Keg–including, but not limited to, the clasp, ferule, and cap–and failed to warn the consumer of the hazard and to instruct the user on how to avoid the hazard.

123.   Upon information and belief, the components used with the Keg–including, but not limited to, the clasp, ferule, and cap–had a flaw in manufacturing, causing an explosion and these components launching like a projectile when used in the ordinary manner intended by Dixon.

124.   Upon information and belief, the components used with the Keg–including, but not limited to, the clasp, ferule, and cap–had a flaw in manufacturing, causing an explosion and these components launching like a projectile when used in the ordinary manner intended by Sabco.

125.   Upon information and belief, the components used with the Keg–including, but not limited to, the clasp, ferule, and cap–had a flaw in manufacturing, causing an explosion and the components launching like a projectile when these components were

used in the ordinary manner intended by Doe Individuals I through X and Roe Legal Entities.

126.    Upon information and belief, the components used with the Keg–including, but not limited to, the clasp, ferule, and cap–failed to include safety features that would have prevented these component(s) from becoming a projectile.

127.    Upon information and belief, the component(s) used with the Keg–including, but not limited to, the clasp, ferule, and cap–became a projectile because of a dangerous condition in these components.

128.    Upon information and belief, the components used with the Keg–including, but not limited to, the clasp, ferule, and cap–had a defect which rendered them unreasonably dangerous.

129.    Upon information and belief, the defect in the components used with the Keg–including, but not limited to, the clasp, ferule, and cap–existed when the product left Dixon.

130.    Upon information and belief, the defect in the components used with the Keg–including, but not limited to, the clasp, ferule, and cap–existed when the product left Sabco.

131.    Upon information and belief, the defect in the components used with the Keg–including, but not limited to, the clasp, ferule, and cap–existed when the product left Doe Individuals I through X and Roe Legal Entities.

132.    At the time of the "Incident" described above, Semone was unaware of any defect in

the components used with the Keg or the dangerous condition of these components.

133.   The defect in the components used with the Keg including, but not limited to, the clasp, ferule, and cap–which caused an explosion and the component(s) to be launched like a projectile– was the proximate cause of injuries and damages suffered by Semone.

134.   The components used with the Keg–including, but not limited to, the clasp, ferule, and cap–were defective in their failure to warn of the danger of these component(s) becoming a projectile.

135.   Failing to warn that the component(s) may become a projectile made the components–including, but not limited to, the clasp, ferule, and cap–unreasonably dangerous.

136.   Safer alternative designs, including safety features, exist that would have prevented the explosion and launching of component(s) like a projectile during ordinary use and prevented or lessened Semone's injuries.

137.   The defective design of the components used with the Keg–including, but not limited to, the clasp, ferule, and cap–made the components unreasonably dangerous.

138.   As a direct and proximate result of each defect listed above, an explosion caused the component(s) to launch like a projectile, strike Semone in the face, and caused Semone to suffer injuries and damages.

139.   Upon information and belief–before it released possession of the components used with the Keg–including, but not limited to, the clasp, ferule, and cap–Dixon, including its officers, directors, and/or managers, knew these components were unreasonably dangerous, but decided not to remedy the hazard.

140.     Upon information and belief–before it released possession of the components used with the Keg–including, but not limited to, the clasp, ferule, and cap–Sabco, including its officers, directors, and/or managers, knew these components were unreasonably dangerous, but decided not to remedy the hazard.

141.     Upon information and belief–before it released possession of the components used with the Keg–including, but not limited to, the clasp, ferule, and cap–Doe Individuals I through X and Roe Legal Entities, including their officers, directors, and/or managers, knew that the these components were unreasonably dangerous, but decided not to remedy the hazard.

142.     Because of the allegations in this Count Two, Semone suffered injuries and damages in an amount in excess of $75,000.00.

### COUNT THREE

### STRICT PRODUCT LIABILITY

**(Against Blefa, Blefa USA, Sabco, Dixon, Doe Individuals I through X, and Roe Legal Entities I through X)**

143.     Semone incorporates by reference all preceding paragraphs of this Amended Complaint herein.

144.     In or around 2017, Blefa was engaged in the business of selling kegs in the United States of America including the State of Arizona.

145.     In or around 2017, Blefa USA was engaged in the business of selling kegs in the United States of America including the State of Arizona.

146.     In or around 2017, Sabco was engaged in the business of selling kegs and keg

components–including, but not limited to, clasps, ferules, and caps–in the United States of America including the State of Arizona.

147.     In or around 2017, Doe Individuals I through X and Roe Legal Entities I through X were engaged in the business of selling kegs and keg components in the United States of America including the State of Arizona.

148.     Upon information and belief, Blefa expected the Keg to reach users or consumers in the condition which it was sold.

149.     Upon information and belief, Blefa USA expected the Keg to reach users or consumers in the condition which it was sold.

150.     Upon information and belief, Sabco expected the Keg and components used with the Keg–including, but not limited to, the clasp, ferule, and cap–to reach users or consumers in the condition which it was sold.

151.     Upon information and belief, Doe Individuals I through X and Roe Legal Entities I through X expected the Keg and components used with the Keg–including, but not limited to, clasps, ferules, and caps–to reach users or consumers in the condition which it was sold.

152.     Upon information and belief, Blefa, Blefa USA, or both was a retailer of the Keg and was therefore a participant in the stream of commerce of the Keg.

153.     Upon information and belief, Sabco was a retailer of the Keg and components used with the Keg–including, but not limited to, clasps, ferules, and caps–and was therefore a participant in the stream of commerce of the Keg.

154.     Upon information and belief, Doe Individuals I through X and Roe Legal Entities I

through X were retailers of the Keg and components used with the Keg–including, but not limited to, clasps, ferules, and caps–and were therefore participants in the stream of commerce of the Keg.

155.    Upon information and belief, Blefa, Blefa USA, or both sold the Keg in the State of Arizona to be used as a beer keg.

156.    Upon information and belief, Sabco sold the Keg and components used with the Keg–including, but not limited to, the clasp, ferule, and cap–in the State of Arizona to be used as a beer keg.

157.    Upon information and belief, Dixon sold the components used with the Keg–including, but not limited to, the clasp, ferule, and cap–for use in a beer keg.

158.    Upon information and belief, Doe Individuals I through X and Roe Legal Entities I through X sold the Keg and components used with the Keg including, but not limited to, the clasp, ferule, and cap in the State of Arizona to be used as a beer keg

159.    At the time of the "Incident" described above, the Keg was used in a manner anticipated by Blefa, Blefa USA, or both.

160.    At the time of the "Incident" described above, the Keg and components used with the Keg–including, but not limited to, the clasp, ferule, and cap–were used in a manner anticipated by Sabco.

161.    At the time of the "Incident" described above, the components used with the Keg–including, but not limited to, the clasp, ferule, and cap–were used in a manner anticipated by Dixon.

162.    At the time of the "Incident" described above, the Keg and components used with the Keg–including, but not limited to, the clasp, ferule, and cap–were used in a manner anticipated by Doe Individuals I through X and Roe Legal Entities I through X.

163.     At the time of the "Incident," Semone was unaware of any defect in the Keg or components used with the Keg or of any danger to her because the Keg or components used with the Keg.

164.     Upon information and belief, the Keg was in the same condition as it was when Blefa, Blefa USA, or both sold it.

165.     Upon information and belief, the Keg and components used with the Keg–including, but not limited to, the clasp, ferule, and cap–were in the same condition they were when sold by Sabco.

166.     Upon information and belief, the components used with the Keg–including, but not limited to, the clasp, ferule, and cap–were in the same condition as they were when sold by Dixon.

167.     Upon information and belief, the Keg and components used with the Keg–including, but not limited to, the clasp, ferule, and cap–were in the same condition as they were when sold by Doe Individuals I through X, Roe Legal Entities I through X, or both.

168.     Upon information and belief, the condition of the Keg remained unchanged at the time of the "Incident" from when it was sold by Blefa, Blefa USA, or both.

169.     Upon information and belief, the condition of the Keg and components used with the Keg–including, but not limited to, the clasp, ferule, and cap–remained unchanged at the time of the "Incident" from when they were sold by Sabco.

170.     Upon information and belief, the condition of the Keg and components used with the Keg–including, but not limited to, the clasp, ferule, and cap–remained unchanged

at the time of the "Incident" from when they were sold by Doe Individuals I through X and Roe Legal Entities I through X.

171.     The sale of the Keg by Blefa, Blefa USA, or both in a defective condition unreasonably dangerous to users or consumers could reasonably be anticipated.

172.     The sale of the Keg and components used with the Keg–including, but not limited to, the clasp, ferule, and cap–by Sabco in a defective condition unreasonably dangerous to users or consumers could reasonably be anticipated.

173.     The sale of the components used with the Keg–including, but not limited to, the clasp, ferule, and cap—by Dixon in a defective condition unreasonably dangerous to users or consumers could reasonably be anticipated.

174.     The sale of the Keg and components used with the Keg –including, but not limited to, the clasp, ferule, and cap–by Doe Individuals I through X and Roe Legal Entities I through X in a defective condition unreasonably dangerous to users or consumers could reasonably be anticipated.

175.     At the time of the "Incident," Semone was unaware of the dangerous condition of the Keg.

176.     At the time of the "Incident," Semone was unaware of the dangerous condition of the components used with the Keg.

177.     Because of the defective and dangerous condition of the Keg, Semone was injured suffered damages.

178.     Because of the defective and dangerous condition of the components used with the Keg –including, but not limited to, the clasp, ferule, and cap–Semone was injured and suffered

damages.

179.     The defective and dangerous condition of the Keg is the proximate cause of Semone's injuries.

180.     The defective and dangerous condition of the components used with the Keg including, but not limited to, the clasp, ferule, and cap is the proximate cause of Semone's injuries

181.     Because Blefa, Blefa USA, or both were in the stream of commerce for the Keg, each is strictly liable to Semone for her injuries resulting from the defect in the Keg.

182.     Because Sabco was in the stream of commerce for the Keg and components used with the Keg-including, but not limited to the clasp, ferule, and cap–it is strictly liable to Semone for her injuries resulting from the defect in the Keg and components used with the Keg.

183.     Because Dixon was in the stream of commerce for components used with the Keg–including, but not limited to, the clasp, ferule, and cap–it is strictly liable to Semone for her injuries resulting from the defect in the components used with the Keg.

184.     Because Doe Individuals I through X and Roe Legal Entities I through X were in the stream of commerce for the Keg and components used with the Keg–including, but not limited to, the clasp, ferule, and cap–each is strictly liable to Semone for her injuries resulting from the defect in the Keg and components used with the Keg.

185.     Because of the allegations in this Count Three, Semone suffered injuries and damages in an amount in excess of $75,000.00.

/ / /

/ / /

## COUNT FOUR

## NEGLIGENCE

**(Against Blefa, Blefa USA, Sabco, Doe Individuals I-X, and Roe Legal Entities I-X)**

186.    Semone incorporates by reference all preceding paragraphs of this Amended Complaint herein.

187.    Blefa and Blefa USA had a duty to design, engineer, manufacture, and distribute a safe keg free of defect and hidden safety hazards.

188.    Sabco had a duty to design, engineer, manufacture, and distribute a safe keg and components used with a keg free of defect and hidden safety hazards.

189.    Dixon had a duty to design, engineer, manufacture, and distribute safe components used with a keg free of defect and hidden safety hazards.

190.    Doe Individuals I through X and Roe Legal Entities I through X had a duty to design, engineer, manufacture, and distribute a safe keg and components used with a keg free of defect and hidden safety hazards.

191.    Upon information and belief, Blefa, Blefa USA, Sabco, Doe Individuals I through X, and Roe Legal Entities I through X breached their duty to Semone in designing, engineering, manufacturing, distributing, and selling the Keg because it had a defect which caused it to explode, launch components–including, but not limited to, the clasp, ferule, and cap–like a projectile, and strike Semone in the face.

192.    Sabco, Dixon, Doe Individuals I through X, and Roe Legal Entities I through X breached their duty to Semone in designing, manufacturing, distributing, and selling unsafe

components used in the Keg–including, but not limited to, the clasp, ferule, and cap–because they had

defects which caused the Keg to explode, launch components like a projectile, and strike Semone in

the face.

193.    Upon information and belief, Blefa, Blefa USA, Sabco, Dixon, Doe Individuals I

through X, and Roe Legal Entities I through X and their respective managers and officers knew about

the hidden hazard in Keg, the components used in the Keg–including, but not limited to, the clasp,

ferule, and cap–and failed to remedy the hazard in conscious disregard for the rights and safety of

others.

194.    Because of the negligent acts and omissions of Blefa, Blefa USA, Sabco, Doe

Individuals I-X, and Roe Legal Entities I-X, Semone suffered injuries and damages in an amount in

excess of $75,000.00.

## COUNT FIVE

## NEGLIGENCE

**(Against Blefa, Blefa USA, Sabco, Dixon, Doe Individuals I - X, and Roe Legal Entities I-X)**

195.    Semone incorporates by reference all preceding paragraphs of this Amended

Complaint herein.

196.    Defendants could have prevented Senone's injuries by providing better training and

instructions, and had a duty to do so, but failed to do so.

197.    The failure of Blefa, Blefa USA, Sabco, Dixon, Doe Individuals I through X, and Roe

Legal Entities I through X to properly instruct and train on the use of the Keg and components used in

the Keg–including, but not limited to, the clasp, ferule, and cap–proximately caused the Keg to explode,

the components to launch like a projectile, and strike Semone's face resulting in injuries.

198.    Because of the negligent acts and omissions of Blefa, Blefa USA, Sabco, Doe Individuals I-X, and Roe Legal Entities I-X, Semone suffered injuries and damages in an amount in excess of $75,000.00.

## **PRAYER FOR RELIEF**

WHEREFORE, Semone expressly reserves the right to amend this Amended Complaint before or at the time of trial, to insert those items of damage and names of those persons not yet ascertainable, prays judgment against all Defendants, and each of them, as follows:

1.    For General damages sustained by Semone in an amount in excess of $75,000.00.

2.    For special damages sustained by Semone for medical expenses, miscellaneous expenses, pain and suffering, and additional elements of damage not presently ascertainable but in an amount in excess of $75,000.00.

3.    For punitive damages against all Defendants.

4.    For deterrent damages against all Defendants.

5.    For reasonable attorneys' fees and costs.

6.    For interest at the statutory rate.

/ / /

/ / /

/ / /

/ / /

/ / /

7.      For such other relief as the Court deems just and proper.

DATED this 2nd day of May 2019.

BIG HORN LAW, LLC


By:      /S/ CHAD SCHAUB
Chad Schaub, Esq.
500 W. Ray Rd. Suite 10
Chandler, AZ 85225
*Attorney for Plaintiff Brittany Semone*